AF Approval _____   Chief Approval _____

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA

     v.                          CASE NO. 6:22-CR-43-WWB-DAB

JUSTIN DWAYNE JOHNSON, SR

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, Justin Dwayne Johnson, Sr., and the attorney for the defendant, F. Wesley Blankner, Jr., mutually agree as follows:

**A.**    **Particularized Terms**

    1.    <u>Counts Pleading To</u>

The defendant shall enter a plea of guilty to Counts One, Three, Four, Five, Eight, and Thirteen of the Indictment. Counts One, Three, Four, Five charge the defendant with production of child pornography in violation of 18 U.S.C. 18 U.S.C. § 2251(a) and (e). Count Eight charges the defendant with production and attempted production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e). Count Thirteen charges the defendant with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).

Defendant's Initials _____

2.    <u>Minimum and Maximum Penalties</u>

Counts One, Three, Four, Five, and Eight are each punishable by a mandatory minimum term of imprisonment of 15 years up to 30 years, a fine of $250,000, a term of supervised release of a minimum of 5 years to life, and a special assessment of $100.

Count Thirteen is punishable by a maximum term of imprisonment of 20 years, a fine of $250,000, a term of supervised release of a minimum of 5 years to life, and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

Additionally, pursuant to 18 U.S.C. § 3014, the Court shall impose a $5,000 special assessment on any non-indigent defendant convicted of an offense in violation of certain enumerated statutes involving: (1) peonage, slavery, and trafficking in persons; (2) sexual abuse; (3) sexual exploitation and other abuse of children; (4) transportation for illegal sexual activity; or (5) human smuggling in violation of the Immigration and Nationality Act (exempting any individual involved in the smuggling of an alien who is the alien's spouse, parent, son or daughter).

Defendant's Initials __) )__                    2

In addition, the Court shall impose an additional special assessment pursuant to 18 U.S.C. § 2259A, of not more than $50,000 for an offense involving the production of child pornography, and not more than $17,000 for an offense involving the possession of child pornography. The Court may order the terms of imprisonment to run consecutively, rather than concurrently.

    3.    <u>Elements of the Offenses</u>

    The defendant acknowledges understanding the nature and elements of the offenses with which the defendant has been charged and to which the defendant is pleading guilty.  The elements of Counts One, Three, Four, and Five are:

> <u>First</u>:    An actual minor, that is, a real person who was less than 18 years old, was depicted;
>
> <u>Second</u>:    The defendant employed and used the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct; and
>
> <u>Third</u>:    The defendant knew or had reason to know that such visual depiction would be transported or transmitted using any means or facility of interstate or foreign commerce.

The elements of Count Eight are:

> <u>First</u>:    An actual minor, that is, a real person who was less than 18 years old, was depicted;
>
> <u>Second</u>:    The defendant employed or used the minor to engage in

Defendant's Initials _J J_         3

sexually explicit conduct for the purpose of producing a visual depiction of the conduct; and

Third:      The defendant knew or had reason to know that such visual depiction would be transported or transmitted using any means or facility of interstate of foreign commerce.

The elements of attempt are:

First:      That the Defendant knowingly intended to employ or use a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct; and

Second:     The Defendant's intent was strongly corroborated by his taking a substantial step toward committing the crime.

The elements of Counts Thirteen are:

First:      The Defendant knowingly possessed an item or items of child pornography;

Second:     The items of child pornography had been shipped or transported using any means or facility of interstate or foreign commerce;

Third:      When the Defendant possessed the items, the Defendant believed the items were child pornography; and

Fourth:     The visual depiction involved a minor who had not attained 12 years of age.

Defendant's Initials ____              4

4.   Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Counts Two, Six, Seven, Nine, Ten, Eleven, and Twelve will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.   No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.   Mandatory Restitution to Victims of Offense of Conviction

Pursuant to 18 U.S.C. § 2259, defendant agrees to make restitution to known victims of the offense, including child victim 1 through 16, for the full amount of the victims' losses as determined by the Court. Further, pursuant to 18 U.S.C. § 3664(d)(5), the defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing.

7.   Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted,

Defendant's Initials ⟩⟩⟩        5

the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to

Defendant's Initials ⏤⏤⏤⏤        6

forfeiture, pursuant to 18 U.S.C. § 2253, whether in the possession or control of the United States, the defendant or defendant's nominees.

The Assets to be forfeited specifically include, but are not limited to, the following: a blue Apple iPhone 12 Pro, which asset was used to commit the offenses stated in Counts One, Three, Four, Five, Eight, and Thirteen of this agreement. The defendant also agrees to the administrative forfeiture of a Seagate external hard drive, which constitute the fruits, contraband, or evidence of the crime charged in Count Thirteen of the Indictment. Child pornography videos were located on the external hard drive.  The defendant agrees that this provision provides him with actual notice of the administrative forfeiture of this asset, and waives the right to receive notice of any subsequent administrative forfeiture of this asset.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action.  The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging

Defendant's Initials ⌣⌣                    7

instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

Defendant's Initials __JJ__          8

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing.  In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.  To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years.  The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement.  If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished

Defendant's Initials  JJ                  9

in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above.  The Defendant expressly consents to the forfeiture of any substitute assets sought by the Government. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.  The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that

Defendant's Initials __JJ__          10

determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including satisfaction of any preliminary order of forfeiture for proceeds.

9.      Abandonment of Property - Computer Equipment

The United States of America and defendant hereby agree that any computer equipment as defined in 18 U.S.C. § 2256, seized from the defendant and currently in the custody and/or control of the Federal Bureau of Investigation or other appropriate agency, were properly seized and are subject to forfeiture to the government according to 18 U.S.C. §§ 2253 or 2254, and/or that the computer equipment and peripherals constitute evidence, contraband, or fruits of the crime for which he has pled guilty.  As such, defendant hereby relinquishes all claim, title and interest he has in the computer equipment and peripherals to the United States of America with the understanding and consent that the Court, upon approval of this agreement, hereby directs the Federal Bureau of Investigation, or other appropriate agency, to cause the computer equipment described above to be destroyed forthwith without further obligation or duty whatsoever owing to defendant or any other person.

As part of the plea agreement in this case, defendant hereby states under penalty of perjury that he is the sole and rightful owner of the

Defendant's Initials _J_J_                11

property, and that defendant hereby voluntarily abandons all right and claim to and consents to the destruction of: JVC video camera, 8GB SD card, white Samsung Note 3, black Samsung Note 3, dark blue Samsung smartphone, black iPhone 4S, white/silver iPhone 6S, blue iPhone, a black Hewlett Packard (HP) Compaq Elite 8300 computer tower, a black Apple iPad Pro 12.9, a pink Amazon tablet, a HP laptop computer, a Seagate external hard drive, a grey Apple iPad, a black Amazon tablet, a Dell computer tower, a black/blue Toshiba laptop, and a white partial Thermaltake computer tower.

      10.   <u>Sex Offender Registration and Notification</u>

         The defendant has been advised and understands, that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school. Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee or a student. The defendant understands that he must update his registrations not later than three business days after any change of name, residence, employment, or student status. The defendant understands that failure to

Defendant's Initials  <u>JJ</u>         12

comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

**B.    Standard Terms and Conditions**

1.    <u>Restitution, Special Assessment and Fine</u>

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

Defendant's Initials ⟨ ⟨                        13

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount of $600, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

 2. <u>Supervised Release</u>

  The defendant understands that the offenses to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

 3. <u>Immigration Consequences of Pleading Guilty</u>

  The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

 4. <u>Sentencing Information</u>

Defendant's Initials _____   14

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.   <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by

Defendant's Initials __)_)__          15

the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any

discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the

Defendant's Initials _J.J_          17

defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.   <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.   <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which

Defendant's Initials ⟋⟋        18

defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

Defendant's Initials  JJ            19

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials  ⟩ ⟩                  20

13.     Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___6___ day of ___July___, 2022.

ROGER B. HANDBERG
United States Attorney

_____          _____
Justin Dwayne Johnson, Sr.            Courtney D. Richardson-Jones
Defendant                            Assistant United States Attorney

_____          _____
F. Wesley Blankner, Jr                Ilianys Rivera Miranda
Attorney for Defendant               Assistant United States Attorney
                                     Criminal Chief, North

Defendant's Initials ___JJ___          21

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                      CASE NO.6:22-CR-43-WWB-GJK

JUSTIN DWAYNE JOHNSON, SR

PERSONALIZATION OF ELEMENTS

The elements of Counts One, Three, Four, and Five are:

First:    Was an actual minor, that is, a real person who was less
          than 18 years old, was depicted?

Second:   Did you employ or use the minor to engage in sexually
          explicit conduct for the purpose of producing a visual
          depiction of the conduct?

Third:    Did you know or have reason to know that such visual
          depiction would be transported or transmitted using any
          means or facility of interstate or foreign commerce?

The elements of Count Eight are:

First:    Was an actual minor, that is, a real person who was less
          than 18 years old, depicted?

Second:   Did you employ or use  the minor to engage in sexually
          explicit conduct for the purpose of producing a visual
          depiction of the conduct?

Third:    Did you know or have reason to know that such visual
          depiction would be transported or transmitted using any
          means or facility of interstate or foreign commerce?

Defendant's Initials _J_J___                    22

As to the charge of attempt:

First:      Did you knowingly intend to employ or use a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct; and

Second:   Did you take a substantial step toward committing the crime.

The elements of Counts Thirteen are:

First:      Did you knowingly possess an item or items of child pornography?

Second:   Were the items of child pornography shipped or transported using any means or facility of interstate or foreign commerce?

Third:     When you possessed the items, did you believe the items were child pornography?

Fourth:   Did the visual depiction involve a minor who had not attained 12 years of age?

Defendant's Initials _JJ_          23

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO.6:22-CR-43-WWB-GJK

JUSTIN DWAYNE JOHNSON, SR

## FACTUAL BASIS

Between on or about January 30, 2017, and on or about October 30, 2019, in the Middle District of Florida, and elsewhere, the defendant, Justin Dwayne Johnson, Sr., did employ or use, or attempt to employ or use, a minor to engage in any sexually explicit conduct for the purpose of producing a visual depiction of such conduct, knowing or having reason to know that such visual depiction would be transported or transmitted using any means or facility of interstate or foreign commerce. *See* Count Eight.

Additionally, on or about March 29, 2019 (Count One), June 14, 2019 (Count Four), November 30, 2021 (Count Three), and between on or about October 3, 2019, and on or about October 11, 2019 (Count Five), in the Middle District of Florida, and elsewhere, the defendant, Justin Dwayne Johnson, Sr., on more than one occasion, did employ or use a minor to engage in any sexually explicit conduct for the purpose of producing a visual depiction of such conduct, knowing or having reason to know that such visual

Defendant's Initials _)_____                    24

depiction would be transported or transmitted using any means or facility of interstate or foreign commerce.

Moreover, on or about January 28, 2022, in the Middle District of Florida, and elsewhere, the defendant, Justin Dwayne Johnson, Sr., did knowingly possess material that contained images of child pornography, that had been shipped or transported using any means or facility of interstate or foreign commerce and was produced using materials that had been shipped or transported in or affecting interstate and foreign commerce by any means, and the images involved a prepubescent minor or a minor who had not attained 12 years of age.  *See* Count Thirteen.

### *Investigation into Defendant*

On or about January 28, 2022, the Defendant contacted D.A. because he was worried his home located in Sanford, Florida would be searched by law enforcement. The Defendant disclosed that one of his foster children, CV4, disclosed, that she saw a camera in the wall socket of her bedroom. The Defendant removed the cameras. The Defendant requested D.A. get rid of the cameras for him. D.A. and the Defendant met at a local car dealership located in Orlando, Florida where the Defendant gave D.A. a yellow package that contained two wall socket cameras and two wall socket camera housing cases.

Defendant's Initials _)_)_                25

The Defendant disclosed to D.A. that he had been secretly recording his foster children in their bedrooms. The Defendant disclosed that he had been recording the children throughout the home. He also stated that he had videos of the children naked and him touching the children recorded on his cell phone and computer. The Defendant showed D.A. a video of a prepubescent female approximately three to four years of age. The female child is lying naked on the floor while the Defendant focuses the camera on the female's vagina. D.A. accepted the two wall socket cameras and the two wall socket camera housing cases from the Defendant. D.A. called child protection services (CPS) after his meeting with the Defendant.

At the time of the call to CPS, there were five children, CV4, CV5, CV3, CV2, and another child, living in the Defendant's home. Each of the children underwent a forensic interview. CV4 disclosed how she found the camera in the outlet in her room. CV4 also informed the interviewer that the Defendant frequently commented on CV10's and CV9's "boobs and butt." CV3 disclosed that the Defendant touched her "private parts" two to three times because it was hurting. She stated that the Defendant opened her private part and started "feeling it." She also disclosed that the Defendant liked to give her "wedgies."

After the Defendant's initial meeting with D.A., he called D.A. again and asked him to meet him to collect his cell phone and tablet because the Defendant was afraid that the police were going to obtain a search warrant for his home. Unbeknownst to the Defendant this call was recorded by law enforcement. D.A. met with the Defendant at a local dealership. The Defendant gave D.A. a blue Apple iPhone 12, a black Hewlett Packard (HP) Compaq Elite 8300 computer tower, and a black Apple iPad Pro 12.9. During the meeting the Defendant told D.A. that he installed the hidden cameras to secretly catch his foster children in the nude. Additionally, the Defendant showed D.A. some videos and images on the Defendant's phone of the Defendant victimizing young children. D.A. viewed an image of a female infant with an erect penis placed across the child's vagina. D.A. asked, "Damn bro that's you" to which the Defendant responded, "It is not the size because it fits." The Defendant also showed D.A. a video of a prepubescent female who was approximately three to four years old. In the video, the Defendant moves the child's underwear aside and spreads the child's vagina apart. The Defendant stated the child tasted "so pure." D.A. secretly recorded the conversation between him and the Defendant when he retrieved the electronics from the Defendant.

Defendant's Initials ⟍ ⟍            27

### Controlled Calls

On February 10, 2022, D.A. went to the Sanford Police Department (SPD) to turn in the devices he obtained from the Defendant and to conduct a controlled call with the Defendant. D.A. and the Defendant spoke on a controlled call where the Defendant admitted that recordings of the children were on his iPhone, iPad, and laptop. During the recorded control call Mr. Adams confirmed that "…theres shit on both…" when discussing the devices. The Defendant provided the passcode to the devices and the video vault application where the videos and photographs were located. Each code was different. The Defendant described what the vault application looked like so D.A. could locate it.

After the controlled call D.A. ensured the passcodes worked on the devices and the video vault prior to turning over the devices to the investigator. D.A. turned over a blue Apple iPhone 12 Pro Max, a black Hewlett Packard (HP) Compaq Elite 8300 computer tower, and a black Apple iPad Pro 12.9. The investigator turned over the devices to the Seminole County Sheriff's Office (SCSO) Digital Forensics Unit.

### Search Warrants

Search warrants were obtained for both the Defendant's home and electronic devices turned in by D.A. On February 10, 2022, SPD executed the

Defendant's Initials  ⅃⅃                    28

search warrant on the Defendant's home while the Defendant was present.

The following was obtained from the Defendant's bedroom during the

execution of the warrant:

- 18-disc packages with pornographic titles (Safe in bedroom)
- 12 "Family Lust" pornographic magazines
- 7 VHS tapes with pornographic titles
- 16 disc with pornographic titles
- "Barely Legal" pornographic disc and packaging for two boxes of adult toys
- Pink Amazon tablet
- Orange County Public Schools (OCPS) HP Laptop
- Seagate drive (closet)
- JVC video camera with 8GB SD card inside (closet)
- Gray Apple iPad
- Black Amazon tablet
- Dell computer tower
- Amazon fire TV stick (trash can)
- PlayStation (PS) 4
- White Samsung Note 3
- Black Samsung Note 3
- Blue Samsung cellphone
- Black Apple iPhone 4S
- White and silver Apple iPhone 6S
- Black and blue Toshiba laptop
- Blue Apple iPhone (on Defendant)
- Blue and gray Apple watch series 6 (on Defendant)
- White partial computer tower
- Black partial computer tower
- PS4 (closet)

On February 14, 2022, the SPD investigator received a thumb drive that

contained the extraction from the Defendant's blue Apple iPhone. The drive

contained CSAM videos images. On February 15, 2022, the Defendant was

arrested on a local arrest warrant. On February 25, 2022, Federal Bureau of Investigation agents arrested the Defendant as he exited Seminole County Jail. During the Defendant's transport to the United States District Court in Orlando, Florida, he inquired into the reason for his arrest. Upon being informed he was arrested for production of child pornography the Defendant spontaneously stated he never had sex with a child. Agents informed the Defendant that there was an image recorded with his penis on a baby's vagina – the Defendant responded he was standing six feet above the child.

### Production and Attempted Production of Child Pornography

The Defendant's blue Apple iPhone contained numerous family photos of the Defendant, including the Defendant's wedding photographs, and "selfies" of the Defendant. The device also included both the Defendant's personal and business email. When the FBI special agents accessed the device, they went to the "Misc" folder and accessed the "VS2" application which was passcode protected. The special agents used the passcode the Defendant gave to D.A. during the controlled call to gain access to the application. Once the application was open the investigators saw two separate folders: 1. "Photos"; and 2. "Videos." When the special agent accessed the "Photos" folder he discovered 36 subfolders. These subfolders contained both adult pornography and CSAM. In the 36 subfolders the special agent found a folder titled "Sad" –

Defendant's Initials _ ) ) _                30

this folder contained numerous images and videos of CSAM. Below is a

description of some of the images and videos located:

*Count One:*

**Title**:  Photo-29-Mar-2019 09:33:50.heic
**Description:**  The image is of an 18-day old infant who is on a changing bed
naked.  An adult male's erect penis is lying between the child's vagina.  The
child was identified as CV11.
**Date Created**: March 29, 2019

CV11 was born in 2019 and placed in the Defendant's home from March 27,

2019, through June 11, 2019. CV11's face is clearly visible in the image. The

Defendant produced this image two days after CV11 was placed in his home.

*Count Three:*

**Title:** Video-30-Nov-2021 22:57:48.mov
**Description:**  The video is approximately 1 minute and 55 seconds in
length.  An adult male is observed digitally penetrating a female child's vagina
who is approximately 6 years old.  The child victim was identified as CV2.
**Date Created:** November 30, 2021

CV2 was born in 2015. She was placed in the Defendant's home on November

29, 2021, through January 28, 2022, when all the children were removed from

the Defendant's custody. The described video was in a subfolder whose titled

matched the first two letters of CV2's first name and CV2 was six year's old

when she was initially placed in the Defendant's home. Additionally, the

location for the creation of the video matches the coordinates over the

Defendant's home.

Defendant's Initials ⟋⟍⟍⟍⟍⟍⟍        31

*Count Four:*

**Title:**  Photo-14-Jun-2019 14:11:50.heic
**Description:**  An image of a female child who is approximately 3 years old.   The child is sleeping while an adult male holds his penis above the child's face.  The child was later identified as CV8.
**Date Created:** June 14, 2019

**Title:**  Photo-14-Jun-2019 14:11:59.jpg
**Description:**  An image of a female child who is approximately 3 years old.   The child is sleeping while an adult male holds his penis above the child's face. This child was identified as CV8.
**Date Created:** June 14, 2019

**Title:**  Video – 14-Jun-2019 14:21:23.mov
**Description:**  The video is approximately 37 seconds in length.  The video is of an adult male and a female child who is approximately 3 years old.  In the video an adult male's hand is observed moving over the panties of a child who is asleep on the ground.  The male rubs his finger across the child's vagina. The female child is snoring throughout the video. This child was identified as CV8.
**Date Created:** June 14, 2019

**Title:**  Video – 14-Jun-2019 14:29:59.mov
**Description:**  The video is approximately 40 seconds in length.  The video is of an adult male and a female child who is approximately 3 years old.  In the video an adult male's erect penis is rubbed against the vagina of the child.  The adult male tries to penetrate the child's vagina with his erect penis. The female child is snoring throughout the video. This child was identified as CV8.
**Date Created:** June 14, 2019

CV8 was born in 2016. She was placed in the Defendant's home on June 13,

2019, through August 19, 2019. The identity of CV8 was confirmed by

photographs taken of CV8 when she was placed in the Defendant's home and

when she left. CV8's face and body are clearly visible in the photographs. The

Defendant's Initials  ) )                    32

Defendant had other images of CV8 on his iPhone that were not CSAM that

confirmed CV8's identity.

*Count Five:*

**Title:** Video – 03-Oct-2019 17:42:19.mov
**Description:** The video is 13 seconds in length. In the video an adult male's hand is touching the child's vagina. The child has distinctive burn scars on her legs. The child appears to be sleeping. This child was later identified as CV10.
**Date Created:** October 3, 2019

**Title:** Video – 03-Oct-2019 17:55:36.mov
**Description:** The video is 44 seconds in length. In the video an adult male is using his hand to manipulate the child's clothing to expose her vagina. There are visible healed burn scars on the child's legs. The child appears to be sleeping. This child was later identified as CV10.
**Date Created:** October 3, 2019

**Title:** Video – 11-Oct-2019 16:40:25.mov
**Description:** The video is 1 minute and 5 seconds in length. In the video the prepubescent female child touches and "plays" with the adult male's erect penis. This child was later identified as CV10.
**Date Created:** October 11, 2019

CV10 was born in 2014. CV10 was placed in the Defendant's home on August

21, 2019, through October 31, 2021. CV10 has distinctive burn scars on her

legs which were visible in the video produced by the Defendant and in the

photograph provided by CPS. During CV10's forensic interview she identified

herself in still shots taken from the video.  Additionally, CV10 disclosed that

the Defendant took his pants off when they watched tv multiple times.

*Count Eight:*

**Date Range:** January 30, 2017 – October 30, 2019
**Title:** Video – 18-Apr-2018 08:41:26.mov
**Description:** The video is 25 seconds in length. The child's vagina and breasts are in the video. The video is zoomed in on the vaginal area. It is clear that the child victim has no idea the recording is occurring. This child victim was later identified as CV6.
**Date Created:** April 18, 2018

CV6 and CV7 are sisters. CV6 was born in 2005. Both CV6 and CV7 resided in the same home as the Defendant from September 2017 until June 2020. CV6's identity was confirmed from multiple family photographs, her mother, and CV6 herself. The Defendant had 39 videos and 29 images of CV6 on his device. The videos were found in a folder whose title matched the child victims' nicknames.

### Possession of Child Pornography

*Count Thirteen:*

There were multiple images and videos of child pornography found on the Defendant's iPhone. Below are descriptions of some of the images and videos found during the search of the device:

**Title:** Video-22-Mar-2017 00:22:46.mov
**Description:** The video is 1 minute and 47 seconds in length. A prepubescent female approximately 2 to 3 years old is blindfolded while an adult male is penetrating the child's vagina. The child is crying throughout the video.

Defendant's Initials ___))___          34

**Title:**Photo-31-Jan-2018 12:35:58.jpg
**Description:** There is a prepubescent female approximately 2 to 3 years old with her vagina exposed. An adult male's erect penis is in union with the child victim's anus.

**Date Range:** February 11, 2014 – January 31,2015
**Title:** MOVI0051.avi
**Description:** The video is 3 minutes and 1 second in length. The child is a white female approximately 14-15 years old nude in the bathroom. The child's breast, butt, and vagina are visible as she prepares to shower. This child victim was later identified as CV15.
**Date Created/Modified:** January 13, 2015

CV15 was born in 2000. CV15 previously lived in the home with the

Defendant and knew the Defendant from her birth. The Defendant had 48

videos of CV15 on his external hard drive.

**Title**:  Video-04-Jan-2022 13:47:52.mov
**Description:**  The video is approximately 42 seconds in length.  In the video an adult male's face is shown. The male also speaks on the video. The male is identified as the Defendant. The Defendant is observed pulling the underwear off of a female child who is approximately 3 years old exposing her vagina to the camera.  The child then lays on the ground and spreads her legs while the Defendant focuses the camera on her vagina.  The child was identified as CV1.
**Date Created**:  January 4, 2022

**Title**:  Video-02-Jan-2022 19:29:10.mov
**Description:** The video is four seconds in length. There is a prepubescent female in the bathtub. The female's legs are spread showing her vagina. There is an adult male's foot in the video and the adult male speaks. The adult male walks towards the bathtub and captures the female from the waist down only. The child was identified as CV1.
**Date Created:** January 2, 2022

Defendant's Initials ⟩ ⟩                    35

CV1 was born on in 2018. She was placed in the Defendant's home on

January 1, 2022, through January 4, 2022. The identity of CV1 has been

confirmed by the CPS records and a photograph taken of CV1 the day after

she left the Defendant's home. CV1's face is clearly visual in the videos

recovered from the Defendant's phone and the photograph taken by CPS. *See*

Count Two.

**Title:** Video-20-Jan-2022 19:33:35.mov
**Description:** : This video is 6 seconds. The recording is of the victim's vagina
with her legs spread open. The focal point is the victim's vagina. This child
was later identified as CV3.
**Date Created:** January 20, 2022

**Title:** Video-20-Jan-2022 19:33:46.mov
**Description:** The video is 5 seconds in length. An adult male spreads the
prepubescent female's vagina. This child was later identified as CV3.
**Date Created:** January 20, 2022

CV3 was born in 2012. She was placed in the Defendant's home on November

29, 2021, through January 28, 2022. The identity of CV3 was confirmed from

photographs of CV3 provided by CPS. These photographs match the

prepubescent female seen in the video. *See* Count Six.

**Title:** Photo – 22-Mar-2019 17:57:43.heic
**Description:** There is a prepubescent female child approximately 7 years old.
An adult male is holding his erect penis near or above the child's face. This
child was later identified as CV12.
**Date Created:** March 22, 2019

**Title:** Video – 24-Mar-2019 12:06:54.mov

Defendant's Initials  ⟩ ⟩          36

**Description:** The video is 1 minute and 24 seconds in length. There is a prepubescent child bathing in the bathtub. An adult male is speaking to the child. During the victim the male zooms in the camera making the focal point of the video between the child's legs trying to capture her vagina. This child was later identified as CV12.
**Date Created:** March 24, 2019

**Title:** Video – 24-Mar-2019 12:24:51.mov
**Description:** The video is 2 minutes and 21 seconds in length. The prepubescent female is bathing in the bathtub. The child stands up in the bathtub – the male makes the child's vagina the focal point of the video. This child was later identified as CV12.
**Date Created:** March 24, 2019

CV12 was born in 2011. She was placed in the Defendant's home on March 21, 2019, through April 19, 2019. The identity of CV12 was confirmed from photographs taken of CV12 by CPS. CV12's face was clearly visible in the CPS photographs and the video produced by the Defendant. *See* Count Seven.

**Title:** Video – 30-Jan-2017 21:21:38.mov
**Description:** The video is 41 seconds in length. The child victim is naked in the bathroom preparing to take a shower or bath. The child victim touches her vagina briefly at one point during the video. The video zooms in on the child's butt when she bends over. This child victim was later identified as CV7.
**Date Created:** January 30, 2017

CV7 was born in 1999. During her forensic interview CV7 identified herself from still shots from the video. The Defendant had one image and three videos of CV7. *See* Count Nine.

**Title:** Video-09-Nov-2021 20:26:12.mov

Defendant's Initials _)_ _)_        37

**Description:** The video is 6 minutes and 1 second in length. An adult male is using a small mirror to look under the bathroom door. The adult male's face is briefly viewable in the start of the video. The recording captures the child victim's pubic area while she is taking a shower. The child victim does not know she is being recorded. This child victim was later identified as CV5.
**Date Created:** November 9, 2021

CV5 was born in 2008. She was placed in the Defendant's home on April 12, 2021, through January 28, 2022. The described video was in a subfolder whose titled matched the first two letters of CV5's first name and CV5 was 12 year's old when she was initially placed in the Defendant's home. *See* Count Ten.

**Title:** Video-09-Aug-2021 21:49:06.mov
**Description:** The video is 1 minute and 14 seconds. The adult male is using a small mirror tool to record the child victim in the shower. He captures her vaginal area. The child does not know she is being recorded. This child victim was later identified as CV4.
**Date Created:** August 9, 2021

**Title:** Photo-13-Aug-2021 12:06:27.jpg
**Description:** The image is a still frame that captures the child's vagina. The child is in the bathroom. The photo appears to be taken from under the bathroom door. This child victim was later identified as CV4.
**Date Created:** August 13, 2021

CV4 was born in 2005. She was placed in the Defendant's home on April 12, 2021, through January 28, 2022. The described video was in a subfolder whose titled matched the first several letters of CV4's first name and CV4 was

Defendant's Initials _)) _                    38

16 years old when she was initially placed in the Defendant's home. The

Defendant had four videos and four images of CV4. *See* Count Eleven.

**Title:** Video – 05-Mar-2018 09:06:44.mov
**Description:** The video is 54 seconds in length. The Defendant's face is seen
at the end of the video. It is clear that the child victim has no idea the
recording is occurring. She is in the shower completely nude and conducting
personal hygiene during most of the video. The video captures the child
victim's vaginal area. This child victim is currently unidentified but thought to
be CV13.
**Date Created:** March 5, 2018

CV13 was 12 years old when this video was produced. During her forensic

interview CV13 identified herself in still shots from the video. CV13 was good

friends with CV6. The video was saved in a folder that matched CV13's

nickname and age at the time the video was made. *See* Count Twelve.

*Modis Operandi*

In many of the videos and images found on the Defendant's phone the

child victims were unaware that they were being photographed and/or

recorded. In all of the videos where the child victim is in the bathroom, they

were unaware of the recordings. The child victim is in the bathroom changing,

using the bathroom, and/or taking a shower. It is clear from the angle of the

videos that the camera is not visible to the child victim. Additionally, at no

point does any of the child victims adjust the camera, look directly at the

Defendant's Initials __JJ__          39

camera, or speak to the camera. The Defendant made the videos using some sort of mirror tool to view under the bathroom door.

Many of the other videos are taken while the child victim is asleep. It is evident that the child victim is asleep because she does not move or acknowledge being inappropriately touched by the Defendant throughout the video. Additionally, in some of the videos the child victim can be heard constantly and heavily snoring throughout the video.

Additionally, the Defendant's face is briefly visible in the beginning and end of some of the videos. In other videos a male voice is heard talking – this voice matches the Defendant's voice. The rooms, bedding, and bathrooms visible in the images and videos match the rooms, bedding, and bathrooms in the Defendant's home.

*Victim's Interviews*

There are 18 known child victims (some of whom are now adults) currently. Each of the known child victims who were willing to be interviewed have been interviewed. During their interviews one or more of the child victims made the following disclosures regarding the Defendant:

- He gave CVs melatonin or "sleepy medicine" each night before bed.

- He rubbed CVs' backs.

- He rubbed CV's butt underneath her clothes close to her vagina.

Defendant's Initials _____          40

- He tickled CVs on their inner thighs and hips.

- He came into the bathroom while CVs showered and pulled the shower curtain back.

- He called CVs into his room while he was naked.

- He always accidentally touched CVs' breasts and butts while wrestling with them.

- He hit and pinched CVs' butts despite the CVs telling him to stop.

- He walked around naked upstairs.

- His hands grazed the sides of CVs' breasts when he hugged CVs.